[Crim. No. 3158.   Second Appellate District, Division One.—January 11, 1939.]

THE PEOPLE, Respondent, v. ROBERT A. GILBERT, Appellant.

Charles H. Clark for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

DORAN, J.—Defendant was charged, in effect, with the crime of conspiracy to violate section 274 of the Penal Code, which section declares it to be an offense to procure an abortion unless the same is necessary to preserve life.

In part, the facts briefly are as follows: On June 30, 1938, Marie Colombos was found dead lying on a couch in the front room of her residence in Glendale, California. Both the doctor that saw the body of the deceased immediately after her death, and the autopsy surgeon, testified that they could not determine the cause of her death.

The deceased was pregnant, the duration of which pregnancy was established at three months. The husband of the deceased, George Colombos, testified that he had discussed his wife's condition with the defendant on or about June 16th, and that the defendant had informed him that he was experienced in relieving such conditions and would accommodate him and his wife for $50 or less. Colombos also testified as to conversations which he had had with his wife on the same subject, as well as to conversations between his wife and the defendant, related to him by his wife before her death. Between June 16th and June 30th, the defendant had visited the Colombos home on several occasions.

The defendant admitted that he had known the Colomboses socially, and contended that the visits to the home were of a social nature. Officer Woodard testified that in a conversation with him the defendant stated that he had called at the Colombos residence on the day of the death of Marie Colombos to discuss her case with her; that while he was there the deceased was writing something and that the deceased undertook to move the couch to "get some better light" whereupon the deceased fainted; that he picked her up and laid her down on the couch and proceeded to give her artificial respiration; that when she failed to respond he became "panicky" and ran out looking for Colombos so that he could call a doctor.

There was no evidence of any kind or character tending to establish either directly or inferentially that any effort had been made by any means to bring about an abortion.

The testimony of Colombos with reference to conversations between him and his wife was objected to at the trial and the objections were overruled. Appellant's contention that such evidence was hearsay is abundantly supported by the law. The ruling resulting in the admission of the testimony was error, and highly prejudicial. Excluding from consideration, for the purpose of determining the legal question involved, the testimony of Colombos, an admitted

coconspirator and accomplice, there is little if anything of any legal consequence left in the record. "The law is settled in California that a conviction cannot be sustained upon the testimony of an accomplice, unless it be corroborated by other evidence which tends to connect defendant with the commission of the offense charged in the indictment (sec. 1111, Pen. Code), and it is equally clear that the corroborative evidence necessary to comply with this requirement must of itself without the aid of the accomplice's testimony connect or tend to connect defendant with the commission of the offense charged." (*People* v. *Rankin,* 10 Cal. (2d) 198, 201 [74 Pac. (2d) 71].) See, also, *People* v. *Kempley,* 205 Cal. 441, 445 [271 Pac. 478]; *People* v. *Davis,* 210 Cal. 540, 554 [293 Pac. 32]. The evidence falls far short of the requirements of the rule.

■ An examination of the record discloses that regardless of how the claimed corroborative evidence be viewed, nevertheless, in order to give it effect, even as tending in that direction, it is necessary at every point to interpret and explain this "corroboration" in the light of the testimony of the accomplice. It requires the testimony of the accomplice to give it direction to the alleged crime before it can be said to connect the defendant with the commission of that crime. Even though it be assumed that the corroborative evidence arouses a suspicion of defendant's guilt, still it is firmly established as the law that more than mere suspicion is required by way of corroboration. (*People* v. *Yeager,* 194 Cal. 452 [229 Pac. 40]; *People* v. *Kelly,* 69 Cal. App. 558, 570 [231 Pac. 767]; *People* v. *Taylor,* 70 Cal. App. 239, 244 [232 Pac. 998]; *People* v. *Jones,* 87 Cal. App. 482 [262 Pac. 361]; *People* v. *Robbins,* 171 Cal. 466, 472 [154 Pac. 317]; *People* v. *Kempley, supra*; *People* v. *Davis, supra.*)

Section 1111 of the Penal Code is mandatory (*People* v. *Allison,* 200 Cal. 404 [253 Pac. 318]), and a conviction cannot stand unless the testimony of the accomplice is corroborated in accordance with the standards laid down by the courts in the interpretation of the statute. "The court has no discretion in the matter, but is bound to apply the statute indiscriminately to all cases wherever an accomplice appears as a witness, and the state's case depends solely upon his uncorroborated testimony." (*People* v. *Robbins, supra,* 466, 469.) When, as here, the testimony of the accomplice is not

sufficiently corroborated, the conviction of the accused is wholly wanting in a legal foundation to support it. (*People v. Viets*, 79 Cal. App. 576, 587 [250 Pac. 588].)

The judgment is reversed.

York, P. J., and White, J., concurred.