[Crim. No. 4683. Second Dist., Div. Two. Dec. 14, 1951.]

THE PEOPLE, Respondent, v. PAUL W. COAKLEY et al., Appellants.

Clifton A. Hix for Appellants.

Edmund G. Brown, Attorney General, and Charles M. Hughes, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellants were jointly accussed on two counts of having received stolen property. Paul Coakley having been convicted of both charges appeals from the judg-

ment and the order denying his motion for a new trial. "Goldie" Adams was convicted on the first count only and proceedings having been suspended she was placed on probation. She has appealed from the judgment as well as from the order denying her motion for a new trial. Since there is no judgment against her, that appeal will be dismissed. All her rights to a reversal of the order will be considered jointly with those of appellant Coakley.

At the time of the crimes, December, 1950, appellants resided in illicit relationship in San Pedro and were planning to enter their new home in Compton. They were both narcotic addicts and sold to others. Two of their fellow narcotists were Vincent and Imogene Reyes. On a day in July, 1950, Coakley in the presence of Goldie told Vincent of his buying a new home and of his desire that Vincent assist him to furnish it with household appliances. Vincent agreed that he could obtain the requisite articles by stealing them. Coakley approved of the plan and promised to trade Vincent capsules of heroin for such merchandise as he might deliver. Goldie asked Vincent to get her a mixmaster, and iron and other household articles. In late July, 1950, Imogene told Goldie the deal of Paul and Vincent was very good and at the same time paid Goldie $8.00 for two capsules of heroin. She accompanied her husband on several occasions when he called to purchase heroin from Coakley. She obtained money from various persons for "certain services." After his arrest, Coakley told Officer Howsley that he had handled narcotics until two weeks prior to his disclosures of his erstwhile vocation.

### FACTS OF COUNT I

The witness Aparici was a friend of and resided near, the Reyes couple. He was a worker in a sardine cannery. When he left his apartment at 4 a. m. of November 4, 1950, he left his typewriter in place. Soon after his departure, Vincent Reyes broke off the screen, burglariously entered through the bathroom window and removed the Corona machine. He took it to Coakley to whom "everybody took all their hot stuff to purchase heroin."

### FACTS OF COUNT II

November 5, 1950, Earl Eaton operated a service station in Wilmington about three miles from the Reyes home. He owned and kept there a mixmaster and bowls, and other

movables for sale. On that day, Imogene Reyes, a stranger to Mr. Bridges, the attendant in charge, announced to the latter that she had lost her wedding ring down the washbowl in the rest room. While Bridges worked two minutes in assisting Imogene, Vincent stole the mixer and bowls, immediately delivered them to Coakley and received six capsules of heroin. Miss Adams told Vincent they were exactly what she desired. On the same day Vincent purloined two steam irons and received from Coakley two capsules of heroin for each one of them. About the same time Vincent burglarized a hardware store and removed a radio for which he received from Coakley two capsules of heroin.

On December 1, 1950, the police found the mixer and bowls in a closet in Coakley's apartment, the typewriter in the attic above and the radio in a bedroom. Both appellants were present. In answer to the police inquiries, Coakley at first stated that Goldie had purchased the mixer and steam iron in Los Angeles. Later on the same day, Coakley in the presence of Vincent and Imogene, admitted to the officers that he had given Vincent two capsules for the mixer, "some stuff" for the iron, and had "bought" the typewriter from Vincent. He denied knowledge of the theft of the articles but Vincent stated that the mixmaster is the one he stole and took to Coakley who said: "That is true." He made the same admission with reference to receiving the steam iron. Later he told the officers that he had received the mixer, the iron and the typewriter from Reyes and had given him only heroin for them, but claimed that he held the typewriter for $15 owed him by Vincent.

## No Error

 Appellants contend that prejudicial error was committed by the court's refusal to instruct the jury on the law of accomplice testimony. Four instructions were offered.[1]

---

[1] "821 . . . A conviction may not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense.

"An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial. Whether or not any witness in this case was an accomplice as defined in these instructions is for the jury to determine from all the testimony and the circumstances as shown by the evidence.

"To render a person an accomplice, he or she must in some manner knowingly and with criminal intent aid, abet, assist or participate in the criminal act. If you should find that any witness in this case so conducted himself in respect to the crime charged, you must find that he was an accomplice (as to that crime) . . .

"823 . . . The corroboration of the testimony of an accomplice re-

Such portions of them should have been given as would have effectively advised the jury of the necessity of having the testimony of accomplices corroborated. There is no contradiction of the evidence that Vincent Reyes offered to steal such articles as Coakley would require for the home of himself and Miss Adams and that Coakley agreed to, and did, purchase the stolen articles. ▌ The rule is that when the testimony of an accomplice is relied upon for a conviction, the court must instruct the jury that a conviction cannot be had on the testimony of an accomplice, unless it is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. (Pen. Code, § 1111; *People* v. *Coffey*, 161 Cal. 433, 436 [119 P. 901, 39 L.R.A.N.S. 704]; *People* v. *Wallin*, 32 Cal.2d 803, 807 [197 P.2d 734]; *People* v. *Rankin*, 10 Cal.2d 198 [74 P.2d 71]; *People* v. *Gilbert*, 30 Cal.App.2d 321 [86 P.2d 135]; *People* v. *Shofstall*, 56 Cal.App.2d 121 [131 P.2d 48].)

▌ In the ordinary case of a thief's selling his loot no claim could be successfully asserted that the vendor is an accomplice of the purchaser. (*In re Morton*, 179 Cal. 510, 513 [177 P. 453]; *People* v. *Burness*, 53 Cal.App.2d 214, 219 [127 P.2d 623].) But in the instant action the thieves were actual accomplices of the appellants. This is established by the evidence of their entering into a conspiracy for themselves to steal and for Coakley to receive the stolen goods. By virtue of such conspiracy they became liable for the identical of-

quired by law may not be supplied by the testimony of one or more other accomplices, but must come from other evidence of circumstances or from the testimony of one or more witnesses who were not accomplices . . .

"829 . . . It is the law that the testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution and in the light of all the evidence in the case . . .

"830 . . . In determining whether or not the testimony of an accomplice has been corroborated as required by law, you must, for the purpose only of your consideration of that question, assume to be removed from the case the testimony of the accomplice(s), and then examine all other evidence with a view to determining if there be any inculpatory evidence, that is, evidence tending to connect the defendant with the commission of the offense. If such other evidence does do that, then the testimony of the accomplice is corroborated; if it does not, then there is no corroboration, although the accomplice may be corroborated in regard to any number of facts sworn to by him . . ."

fense committed by him. (*People* v. *Lima,* 25 Cal.2d 573 [154 P.2d 698].)

While it was error to refuse the instructions, how could appellants have been prejudiced? There was abundant corroboration aside from the Reyes' testimony to connect appellants with the crime charged. The articles stolen from the home and the service station were found in appellants' apartment. Access to the typewriter was made difficult by their placing it in the attic. No consent was given by either victim to the removal of the items taken. Neither appellant denied they had possession of the stolen property. Possession was itself sufficient corroboration. (*People* v. *Rice,* 29 Cal. App.2d 614, 620 [85 P.2d 215].) It is not required that corroborating evidence itself go so far as to establish guilt without the aid of the testimony of the accomplice. (*People* v. *Miller,* 54 Cal.App.2d 384, 386 [128 P.2d 785].)

In addition to the possession of the stolen articles and the confession of appellants, they are now confronted by the falsehoods they told the officers in their efforts to exculpate themselves, and Goldie's subsequent refusal to answer questions of the officers. Such contradictions by one accused, or his silence or his lies are independent corroborative evidence. (*People* v. *Willmurth,* 77 Cal.App.2d 605, 612 [176 P.2d 102]; *People* v. *Sandelin,* 105 Cal.App.2d 179 [233 P.2d 147]; *People* v. *West,* 4 Cal.2d 267, 371 [49 P.2d 276].)

In view of such strong corroboration it is a reasonable deduction that the refusal of the court to give the requested instructions was not prejudicial. No presumption of prejudice arises from error. Before an error may suffice to require a reversal, it must be shown that the accused was substantially injured by the error. (*People* v. *Lawlor,* 21 Cal.App. 63, 71 [131 P. 63]; *People* v. *Thompson,* 68 Cal. App. 487, 493 [229 P. 896]; *People* v. *McEvers,* 53 Cal.App. 2d 448, 453 [128 P.2d 93].) Where the testimony of an accomplice is disregarded and the remaining evidence is inculpatory and tends to connect the defendant with the offense charged, then the accomplice is corroborated. (*People* v. *White,* 35 Cal.App.2d 61, 94 [94 P.2d 617]; *People* v. *Morton,* 139 Cal. 719, 724 [73 P. 609].) But his testimony "is required to give to the 'corroboration' direction to the alleged crime, before such corroborative testimony can be said to connect the defendant with the commission of the crime." (*People* v. *Sawaya,* 46 Cal.App.2d 466, 470 [115 P.2d 1001].)

In *People* v. *Solomon,* 6 Cal.Unrep. 305 [58 P. 55], it was held that the testimony of the accomplice was sufficiently corroborated by proof that the accused placed the stolen goods in the back room of a saloon, saying that he had loaned money on them and not explaining why he put them there.

Finally, appellants were both morphine addicts and Coakley had been a heroin dealer prior to his transaction with Reyes. He had evidently accumulated no household appliances. He desired them for his prospective home. Add these facts to the fact of his possession of the stolen goods and his admission that he figured Vincent had "heisted" the typewriter because he was not "a member of the intelligentsia" and the corroboration is abundant.

Golden Adams was no innocent babe. She was living with Coakley and was a friend of Vincent and Imogene. While she at first denied knowledge of the thieving of the couple, she made no protest when, in her presence, Vincent told the officer of having sold her a "regular iron" for two capsules, the usual price "Paul has been giving me."

With such proof adopted by both court and jury, could there be a reasonable doubt as to the guilt of appellants? If they are guilty, it would be preposterous to discharge them or to remand the case for a new trial because of the court's "error as to a matter of procedure" or of its "misdirection of the jury." (Const., art. VI, § 4½.) The adoption of that section must have and hold its significance in the corpus juris of California. It spelled the end of meaningless reversals and of maintaining courts for the amusement of professional criminals.

## The Verdicts

Miss Adams contends that the verdict of guilty on Count I vitiated the verdict of not guilty on Count II. She argues that the evidence against her shows only one conspiracy by means of which the Reyes couple were to obtain specific personal property for appellants, citing *Oliver* v. *Superior Court,* 92 Cal.App. 94 [267 P. 764]; *In re Johnston,* 3 Cal.2d 32 [43 P.2d 541]; *People* v. *Bales,* 74 Cal.App.2d 732, 734 [169 P.2d 262]. Such contention is contrary to the clear letter of section 954 of the Penal Code, to wit, "a verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count." Each count in a pleading charges a separate and distinct offense and stands upon its own merits. If one falls its failure does not affect

the course taken upon the remaining counts and their strength and the force of the evidence produced as proof of them cannot give support to one whose proof is lacking. A verdict of acquittal of one count is not acquittal of any other count. (*People* v. *Van Os*, 96 Cal.App.2d 204, 206 [214 P.2d 554].) The cases cited by appellants do not avail them. On their facts they are clearly distinguished. For instance, in the Oliver decision, the defendants were acquitted of the overt acts. The court properly prohibited a retrial of the conspiracy. Because Johnston was convicted of a conspiracy and acquitted of the overt acts, he was discharged on the strength of the Oliver holding.

## ACCUSATORY STATEMENT

Miss Adams claims prejudicial error in the court's allowing Officer Mascillo to testify to her refusal to answer when he said, "You knew that these articles were stolen when Paul bought them." She contends that her reply was not an admission of guilt, citing *People* v. *Simmons*, 28 Cal.2d 699, 712 [172 P.2d 18]. The cited decision is adverse to the contention. It holds that an accusatory statement properly becomes a part of the record when the accused responds with an evasive reply.

The appeal of defendant Adams from the judgment is dismissed; the judgment against Coakley and the order denying both motions for a new trial are affirmed.

McComb, J., concurred.

A petition for a rehearing was denied December 26, 1951.