[Crim. No. 2726. Fourth Dist., Div. Two. Sept. 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR V. JONES, Defendant and Appellant.

Robert H. Green for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

KERRIGAN, J.—The grand jury of Orange County issued an indictment accusing the defendant Arthur V. Jones, and two codefendants, Donald Franklin and Robert Sisko, of conspiracy (Pen. Code, § 182) to commit perjury in two civil suits; the second count accused defendant of subornation of perjury (Pen. Code, § 127) in that he induced Franklin, Sisko and Laurence Boothe to commit perjury in stating as true a material matter they knew to be false, to wit, a letter dated April 22, 1962, from Boothe to Franklin was received and acted upon by Franklin and Sisko, as real estate agents, on behalf of William Kachig, during April-May 1962; a third count charged that Franklin and Sisko had committed perjury (Pen. Code, § 118) ; and count IV accused defendant of offering false evidence (Pen. Code, § 132), which evidence consisted of the aforesaid letter dated April 22, 1962, knowing said letter to have been fraudulently antedated. The charges were reiterated in an amended indictment. A jury trial ensued, and the codefendants Franklin and Sisko were acquitted. Defendant Jones, who will be referred to herein as "defendant," was found guilty of subornation of perjury as charged in count II, and offering false evidence as charged in count IV, but was found not guilty of conspiracy as charged in count I. Defendant's motion for new trial was denied and his application for probation was similarly denied. He was sentenced to state prison, and the sentences were ordered to run concurrently. Defendant was granted the privilege of remaining free on bond pending this appeal, and this appeal is from the judgment of conviction as to both counts.

This criminal prosecution had its inception in two civil suits, Boothe v. Kachig and Franklin v. Kachig, which civil actions were consolidated for trial in the Superior Court of Orange County. Both civil cases arose out of a real estate transaction involving the exchange of two parcels of real property. Boothe sued Kachig for breach of contract in failing to consummate the exchange; Franklin sued Kachig for the purpose of recovering a real estate broker's commission in connection with the same exchange. The appellant herein is a duly licensed attorney at law, who represented both plaintiffs in the consolidated actions. The codefendant-Sisko was a

salesman employed by the codefendant-Franklin. Sisko performed services in connection with the contemplated exchange of properties. The falsified letter which formed the basis for the issuance of the indictment and amended indictment herein was presented in evidence during the trial of the consolidated civil actions.

The factual background which formed the basis for the civil suits reflects the following events: Kachig was a real estate loan broker and agent for World Savings; he knew real estate broker Franklin and the latter's salesman, Sisko, from having called upon them to solicit loan business whereby he would contact members of Franklin's firm for the purpose of determining whether they had sold any properties for which World Savings could arrange financing; in early April 1962 Kachig visited Franklin's real estate office in the Corona del Mar area of Newport Beach, California; Kachig spoke to Sisko and advised Sisko that he owned a 10-acre avocado-lemon grove in Fallbrook, California, which he would like to exchange for a bayfront residence in the vicinity of Newport Beach. Boothe owned a residence on Bayside Drive, Newport Beach, California, which had been listed for sale with the Franklin firm; Kachig and his wife accompanied Sisko to Boothe's residence and thereafter Kachig submitted an exchange offer through Sisko to Boothe; this exchange offer placed a value of $98,000 on the Fallbrook land; Boothe visited the Fallbrook area, examined the avocado-lemon grove and formed the opinion that the valuation of the Fallbrook parcel was too high; the exchange agreement was redrawn wherein the valuation of the Fallbrook property was reduced to $88,000; the modified exchange agreement provided for a transfer of title and possession of both properties on July 1, 1962; the revised exchange agreement was signed by Mr. and Mrs. Kachig, and Sisko presented the exchange agreement to Boothe; Boothe signed the agreement but changed the date for possession of his property from July 1, 1962 to July 31, 1962, by inserting a "3" in front of the "1" and initialing the change; the agreement was then returned to Kachig on April 21 and he noted that the July 1 occupancy date had a "3" written in front of the "1" to make it July 31; Kachig said July 31 would not be acceptable because he intended to sell the beach property and there would only be a market or demand for such seasonal property during the summer months; in the event a sale could not be negotiated during the summer

months, it would be necessary to retain the property during the entire winter season, which he was unwilling to do; thereafter, various sets of escrow instructions were presented to Kachig but he refused to sign the agreements presented by Franklin's firm because the date of possession provided therein was July 31; during the latter part of May or the early part of June 1962, escrow instructions were finally handed to Kachig wherein July 1 was agreed upon as the date of possession, but these escrow instructions were presented too late to consummate the escrow by July 1 inasmuch as the Boothe residence was situated on land subject to a long-term leasehold interest, and an assignment of the leasehold interest ordinarily could only be accomplished upon expiration of a period of 5 to 6 weeks, which would mean that the transaction could not be concluded by the contemplated date of July 1; Kachig therefore refused to complete the exchange and took the position that the exchange offers had 5-day time limits, and the exchange was obviously not effected within the specified time period.

Franklin retained the defendant Jones as his counsel for the purpose of filing suit against Kachig to recover his broker's commission on the theory that Franklin's firm had fully performed all services to be rendered under the exchange agreements. Sisko informed Boothe that the defendant was going to represent the Franklin firm in the suit to recover the broker's commission from Kachig, and Boothe decided to retain defendant for the purpose of filing an action to recover damages for breach of contract by reason of Kachig's failure to complete the exchange.

In the summer of 1962, independent actions were filed by the defendant in the Orange County Superior Court wherein he represented both Boothe and the broker, Franklin; depositions were taken in connection with said lawsuits; following the filing of the two civil actions, the exact date of which is in dispute, but prior to the trial of the civil actions, Boothe visited the defendant's office; defendant explained to Boothe that his lawsuit had a weakness inasmuch as the date of possession was a disputed issue; defendant handed Boothe the following letter and requested Boothe to sign it; this communication represents the false document which was later to form the basis for the filing of the criminal charges involved herein, and reads as follows:

"Laurence Boothe
2016 Bayside Drive
Corona del Mar, California
Mail: P.O. Box 35

"April 22, 1962

"Donald V. Franklin, Realtor
3250 East Coast Highway
Corona del Mar, California

"Dear Mr. Franklin:

"I'm sorry I was not at home when Mr. Sisko brought the Exchange Agreement to me for my re-initialing. This letter, however, constitutes my irrevocable agreement to deliver my Bayside property not later than July 1st, 1962, as per Mr. Kachig's terms and conditions. You might query Mr. Kachig to see if he is agreeable to my leaving a few items in the guest house for the month of July for which I shall be glad to pay him rent.

"Thank you for your courtesy in this matter.

"Yours very truly,
(s) Laurence Boothe
"Laurence Boothe"

The trial of the consolidated actions was conducted in May 1963 before Judge William Lee of the Orange County Superior Court; Boothe was sworn as a witness and gave perjured testimony in the civil suit to the effect that he had written and signed the letter in April 1962; the letter of April 22, 1962, was introduced in evidence; Sisko testified that he had communicated the contents of the letter to Kachig in April 1962; Franklin testified that he had received the letter in April 1962; Kachig testified he had never seen nor heard of the letter; at the conclusion of the civil trial, judgment was rendered in favor of the broker Franklin and against Kachig in a sum in excess of $10,000; Boothe was awarded only nominal damages of $100; Boothe was not happy with the token-damage award and appealed the civil judgment, and the defendant also acted as his attorney in connection with the civil appeal.

Following rendition of the two judgments, Kachig visited the court clerk's office and examined the type on the letter and then proceeded to various agencies and commercial enterprises for the purpose of comparing the type; he conducted an investigation to determine the make and model of typewriter

which had made the particular type impressions contained in the letter; Kachig then visited the district attorney's office.

Boothe was ultimately contacted by an investigator of the district attorney's office; he first denied any involvement in perjury or falsifying evidence, but when a promise of immunity was offered, he decided to cooperate with the prosecutor; in the interim, Boothe discussed with the defendant the subject of the typewriter upon which the letter had been typed; defendant said he wanted to get rid of the typewriter and asked Boothe if he could use the latter's boat to throw it in the bay, although he never consummated this plan; finally, Boothe's appeal was scheduled for argument in the District Court of Appeal in San Bernardino; on the day of argument, Boothe called the defendant at San Bernardino; he told the defendant that he had been contacted by the district attorney and thought that the appeal should be dropped; defendant stated he was going to pursue the appeal anyway because it was too late to stop; defendant inquired as to what Boothe had told the district attorney; Boothe stated that he had told them everything, and defendant responded with the comment, "Oh, my God!" In his statements to the district attorney, Boothe admitted that he had neither typed nor written the antedated letter, and further confessed that he had falsely testified in the civil action in stating that he had prepared the letter.

Thereafter, the indictment was handed down by the grand jury. During the trial, the defendant's former secretary, Mary Voeth, testified on behalf of the prosecution. Her testimony reflects that on August 29, 1965, defendant called her at home and said, "I want to talk with you; it is most urgent I talk with you. I am in serious trouble." Defendant thereafter visited her apartment; at the time she was no longer defendant's secretary, having terminated her employment with the defendant in April 1964; defendant took her to a restaurant and showed her a carbon copy of a letter and asked her if she remembered the letter; she indicated that the names rang a bell, but did not recall ever having seen a carbon copy of it; she remarked that it was obvious that it wasn't typed on defendant's office typewriter; defendant said, "Mary, I'm in serious trouble"; defendant confided that the district attorney's office was investigating this particular letter and had discovered it was typed by someone in his office; defendant said he would be disbarred if the prosecution could prove it; defendant asked if she knew a

handwriting expert, and she replied that her present employer utilized the services of Harris and Harris.

The following Tuesday, Mary contacted Harris and Harris, but determined that in the interim defendant had also contacted such firm; she next spoke to defendant on October 16, when he visited her home; defendant inquired if she had spoken to the district attorney's investigator, and Mary indicated that she had not.

During their initial conversation on August 29, defendant requested that Mary go through all of the shorthand pads she had utilized while in his employ for the purpose of determining whether there were any notes in any of the shorthand pads that were similar to the contents of the crucial letter. Thereafter, in mid-October, defendant brought a large box of shorthand pads to Mary's apartment. Mary went through all the dictation pads and examined her notes. On October 22 defendant told Mary that something disastrous had happened to Mr. Boothe, and he then advised what had transpired in his telephone conversation with Boothe when defendant was appearing in the District Court of Appeal. Defendant then said, "You know, Mary, Mr. Boothe called me at home one Sunday, that particular Sunday, and asked me what he should do since he had not initialed the escrow instructions, and I told him he had better write a letter fast or initial the escrow instructions." Defendant also said to Mary, "Well, that is why I called you at home and asked you to go to the office and Mr. Boothe was to dictate this letter to you." Mary replied to the effect that defendant's statement was not true, but defendant went on again to say, "Well, you remember that Sunday." Mary informed defendant that he should at least be honest with her and that they should get together and go over the whole situation. Actually, Mary had never gone to the office to type a letter for Mr. Boothe.

On November 2 Mary had a conversation with defendant which she recorded; this conversation was recorded by her before she had had any contact whatsoever with law enforcement agents; thereafter, a second recording of a phone conversation was made on November 18, and the district attorney's investigator was present on the latter date and the recording was made at his suggestion and with governmental equipment. In one recorded conversation, defendant stated that a paper company had switched paper in 1962, but that he was all right after the switch, and nobody could say the letter was not written on April 22, 1962; another tape indicates that

Mary told defendant that the district attorney's investigator was coming to see her that very day, and defendant suggested that she tell the investigator she knew nothing about the matter.

Defendant had an attorney friend pick up the box containing the shorthand pads from Mary in late October. Mary withheld two notebooks, which fact was unknown to the defendant. However, Mary intimated in one of the recorded November telephonic conversations with defendant that she still had one steno book in her possession and inferred that it contained the notes from which the fake letter had been typed; defendant asked for the shorthand notebook and wanted to come for it "this minute"; she said she would burn the pad and he agreed that this would be best; defendant indicated that he couldn't talk on the telephone, and finally he agreed to go to a public telephone and call back, which he promptly did; he again suggested that she destroy the notebook; Mary explained that she originally began making tape recordings of her phone conversations with the defendant because she had heard numerous rumors which indicated that she was a suspect, or about to be indicted, in regard to falsifying evidence in a civil case, and she wanted to be in a position to establish her innocence.

During the criminal trial, evidence was introduced to the effect that Irving C. Jordan was a builder and land developer who occupied the office next door to defendant's professional office; that in the year 1961, Jordan purchased an I.B.M. electric typewriter which was delivered in February 1962; and that Jordan made the typewriter available to defendant and his employees. The prosecution caused tests to be made of Jordan's typewriter and expert testimony was elucidated to the effect that the fraudulent letter was "more than likely" typed on Jordan's machine.

Defendant testified in his own behalf and his testimony might be summarized in the following manner: He was 62 years of age at the time of trial, and received his law degree from Washington University, St. Louis, Missouri; he had been admitted to practice in the State of Missouri in 1924-1925, but had not engaged in active practice there; he was admitted to the California Bar in 1932, but did not enter the actual practice of law until 1952-1953; he worked in the motion picture industry, and after successfully completing the California Bar, he continued to be so employed because he was firmly

established in the field; he had served in the army and was a retired Lieutenant-Colonel; he first saw the letter in July 1962; the civil action initiated by Boothe was not commenced until January 1963; Boothe had access to defendant's file relating to Boothe's case for a week or two, and it was later discovered that the letter was missing; Boothe promised to look for it; later Boothe found a copy, but it was not a duplicate original; a week or so later, defendant's secretary told defendant that the letter had been found by Boothe and that he returned it; and defendant thereupon put it back in the file; Franklin's lawsuit had been filed in July 1962, but the filing of the Boothe action was deferred because Boothe had to establish damages by selling his house, inasmuch as it was defendant's opinion that if Boothe sold it for less than the price specified in the Boothe-Kachig exchange, that he would then be entitled to the difference in damages.

Franklin and Sisko testified in their own behalf and denied that they had lied during the civil action or that they had anything to do with the preparation or typing of the letter involved; there was further defense testimony indicating that defendant's secretary, Mary Voeth, admitted that she wrote a letter that was going to get either her or the defendant in a lot of trouble.

Defendant urges the following grounds in seeking a reversal: (1) The testimony of the accomplice was not corroborated; (2) the court erred in failing to instruct the jury in the precise language of section 1111 of the Penal Code to the effect that corroboration of an accomplice is insufficient if it merely shows the commission of the offense or the circumstances thereof; (3) the court did not instruct the jury that the testimony of two witnesses is required to establish subornation of perjury; (4) the court did not properly instruct the jury as to necessary elements constituting the crime of subornation of perjury; (5) the court erred in instructing the jury that circumstantial evidence could be considered in a prosecution for subornation of perjury; (6) it was error to admit evidence of the taped conversations between the defendant and his former secretary; (7) the trial court erred in failing to instruct the jury that oral admissions are to be viewed with caution; and (8) the court failed to admonish the jury upon recess and adjournment that they should not discuss the case or form an opinion as to the innocence or guilt until the cause was submitted for decision.

The trial court instructed that Boothe was an accomplice as

a matter of law with reference to the charge of offering false evidence. ■ An "accomplice" is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of the crime. (Pen. Code, § 1111; *People* v. *Phillips,* 240 Cal.App.2d 197, 202 [49 Cal. Rptr. 480].) ■ To be an accomplice whose testimony must be corroborated by other evidence tending to connect defendant with the commission of the offense, one must be liable to prosecution for the identical offense with which the defendant has been charged at the time when the testimony of the accomplice is given. (*People* v. *Medina,* 198 Cal.App.2d 224, 230-231 [17 Cal.Rptr. 722].) ■ A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is insufficient if it merely shows the commission of the offense or the circumstances thereof. (Pen. Code, § 1111.) ■ "In order to corroborate the testimony of an accomplice, the prosecution must introduce independent evidence which of itself connects the defendant with the crime without any aid from the testimony of the accomplice. The amount and type of evidence necessary to produce such corroboration obviously differs according to the circumstances of each case." (*People* v. *Luker,* 63 Cal.2d 464, 469 [47 Cal. Rptr. 209, 407 P.2d 9].) ■ Corroborating evidence must tend to connect the defendant with the commission of the offense for the purpose of satisfying the jury that the accomplice is telling the truth. (*People* v. *Deverich,* 102 Cal.App.2d 215, 218 [227 P.2d 45]; *People* v. *Estes,* 99 Cal.App.2d 745, 747 [222 P.2d 454].) Thus, corroborating evidence must tend to implicate the defendant (*People* v. *Channell,* 107 Cal.App. 2d 192, 197 [236 P.2d 654]; *People* v. *Reingold,* 87 Cal. App.2d 382, 393 [197 P.2d 175]; *People* v. *Garrison,* 80 Cal.App.2d 458, 461 [181 P.2d 738]), and must therefore relate to some act or fact which is an element of the crime, but it is not necessary that the corroborative evidence be sufficient of itself to establish every element of the offense charged. (*People* v. *Luker, supra*; *People* v. *Lyons,* 50 Cal.2d 245, 257 [324 P.2d 556].) ■ Consequently, corroborating evidence may be slight and entitled to little consideration when standing alone. (*People* v. *Wade,* 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Wayne,* 41 Cal.2d 814, 822 [264 P.2d 547].)

■ Defendant's initial contention is that the testimony of

the accomplice Boothe was not adequately corroborated. The independent evidence introduced herein consisted of the testimony of Kachig, who described the background of the land exchange negotiations and offers; the fabricated letter was before the jury; defendant was the attorney for both Boothe and the real estate broker in connection with the two civil suits; defendant, as counsel in the civil actions, offered the perjured testimony and introduced the false letter in evidence; expert testimony established that the typewriter utilized in the preparation of the letter was owned by a business man whose office immediately adjoined defendant's office, and that the defendant and his employees had access to the machine; Kachig categorically denied that he had ever seen or been advised as to the contents of the fraudulent letter; the statements made by defendant to his former secretary after she had left his employ tend to indicate that defendant wanted Mary to destroy the stenographer's pad or turn it over to him. An inference thus arises that defendant was endeavoring to suppress evidence, which conduct indicates a consciousness of guilt. (See *People* v. *Carter,* 192 Cal.App.2d 648, 660 [13 Cal.Rptr. 541].) This cumulative evidence is entirely independent of Boothe's testimony and constitutes sufficient corroboration of the accomplice's testimony.

■ Defendant next maintains that the instructions on the subject of ''accomplice'' were fatally defective because the jury was not instructed that the ''corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.'' (Pen. Code, § 1111.) The trial court instructed the jury extensively on the accomplice issue by giving the following specific instructions: the testimony of an accomplice must be corroborated (CALJIC 821, rev.); when corroborating evidence is sufficient (CALJIC 822, rev.); a criminal intent is necessary to make one an accomplice (CALJIC 824); testimony of an accomplice is to be viewed with caution and distrust (CALJIC 829); the burden is upon prosecution to introduce independent evidence to corroborate the testimony of an accomplice (*People* v. *Luker, supra,* 63 Cal.2d 464, 469; one accomplice may not corroborate another (CALJIC 823); and when a person is an accomplice as a matter of law (CALJIC 826, rev.).

While it is error for the trial court to fail to instruct on the law of an accomplice's testimony where the prosecution introduces the testimony of an accomplice (*People* v. *Gullick,* 55 Cal.2d 540, 542-543 [11 Cal.Rptr. 566, 360 P.2d 62]; *People* v.

*Coakley*, 108 Cal.App.2d 223, 227 [238 P.2d 633]), numerous instructions on the subject were rendered in this case. Although it is true that the trial court failed to instruct in the exact language of section 1111 of the Penal Code (see *People* v. *Coakley, supra,* 108 Cal.App.2d 223, 227), it does appear that the failure to utilize the precise terminology of the statute verbatim would not constitute error inasmuch as the court did define corroboration in other terms, and the instructions submitted to the jury had the effect of informing them that the corroboration had to do more than merely show the commission of the offense or the circumstances thereof. The jury was instructed that: the corroboration, apart from the accomplice's testimony, must directly and logically connect the defendant with the commission of the offense (*People* v. *Coakley, supra; People* v. *McNamara,* 103 Cal.App.2d 729, 738 [230 P.2d 411]); the evidence is sufficient if it does not require interpretation and direction from the testimony of the accomplice (*People* v. *Lyons, supra,* 50 Cal.2d 245); if such independent evidence tends to implicate the defendant (*People* v. *Channell, supra,* 107 Cal.App.2d 192, 197; *People* v. *Reingold, supra,* 87 Cal.App.2d 382, 393; *People* v. *Garrison, supra,* 80 Cal.App.2d 458, 461); in the event the evidence does not do so, then there is no corroboration, although an accomplice may be corroborated in regard to any one of other facts shown sworn to by him. (See *People* v. *MacEwing,* 45 Cal.2d 218, 223-225 [288 P.2d 257].) The instructions were sufficient herein to inform the jury that the corroboration must consist of evidence which proves more than the mere commission of the offense or the circumstances thereof.

▇▇▇ The next charge of error is that the trial judge failed to instruct the jury that the testimony of two witnesses is required to convict a defendant of subornation of perjury.

In the case under review, an extraordinary event occurred during the course of the reading of the instructions. The trial judge read the instruction which required the "two-witness" rule for proving the crime of perjury, the pertinent provisions of which are set forth as follows: "A conviction of perjury may not be based upon the uncorroborated testimony of a single witness or upon evidence which is wholly circumstantial. Perjury must be proved by the testimony of two witnesses or of one witness and corroborating circumstances; . . . ." (CALJIC 766.) Following the reading of the instruction, defense counsel asserted that the instruction should cover the crime of subornation of perjury as well. The

trial judge then reread the instruction to the jury by inserting the words "or subornation of perjury" after the word "perjury" in the first sentence of the quoted instruction; however, the trial court failed to insert the words "or subornation of perjury" after the word "perjury" at the beginning of the second sentence of the instruction relating to the two-witness rule. Thus, defendant maintains that the jury was never instructed that the crime of subornation of perjury must be proved by the testimony of two witnesses or one witness and corroborating circumstances, and cites 38 Cal.Jur. 2d, Perjury, p. 436, in support of his position.

 "Perjury must be proved by the testimony of two witnesses, or one witness and corroborating circumstances." (Pen. Code, § 1103a.) However, the case authorities are apparently not in accord as to whether the "two-witness" rule applies to the crime of subornation of perjury. (See Anno.: Rule as to corroborative evidence in prosecutions for subornation of perjury, 56 A.L.R. 407.) Notwithstanding the lack of harmony, California authority exists to the effect that the commission of the crime of subornation of perjury may be established by the testimony of an accomplice and corroborating circumstances. (See *People* v. *Nickell*, 22 Cal.App.2d 117, 121 [70 P.2d 659].) A fair analysis of the instruction given by the trial court would indicate that the jury was informed as to the existence of the "two-witness" rule with reference to the subornation of perjury count. Furthermore, assuming that the instruction was deficient in not expressly referring to the crime of subornation of perjury in the second sentence of the quoted instruction, it does not seem probable that any prejudice resulted to the defendant in view of the numerous accomplice instructions which were rendered by the trial court. The jury was instructed that Boothe was an accomplice as a matter of law with respect to the charge of offering false evidence, but not as to the subornation of perjury count. Under California statute, an accomplice is one who is liable to prosecution for the identical offense charged against the defendant. (Pen. Code, § 1111.) Consequently, a suborned witness cannot be considered as an accomplice of the suborner inasmuch as the former is not subject to prosecution for subornation but is liable for prosecution for perjury, a distinct and different offense. Inasmuch as the decisional process for determining the issue as to guilt or innocence relative to the charge of subornation of perjury is extremely similar to that of offering a false letter in evidence, and since

a verdict of guilty was reached as to both counts herein, it does not seem possible that further clarification of the subornation of perjury instruction would have altered the outcome of the case in any regard since the jury had to find corroboration on the false evidence charge before the panel could convict him of such offense. Moreover, the trial judge gave careful consideration to the issue at the time of the hearing on the motion for new trial and concluded that the jury had not been misled.

Defendant next maintains that the trial court failed to instruct the jury adequately as to the necessary elements constituting the crime of subornation of perjury. ▆▆▆ Every person who willfully procures another person to commit perjury is guilty of subornation of perjury. (Pen. Code, § 127.) ▆▆▆ The elements of the the crime of subornation of perjury consist of: a corrupt agreement to testify falsely (See *People* v. *Coffey*, 161 Cal. 433, 443-446 [119 P. 901, 39 L.R.A. N.S. 704]); proof that perjury has in fact been committed (*People* v. *Ross*, 103 Cal. 425, 428 [37 P. 379]); the statements of the perjurer were material (*People* v. *Nickell, supra*, 22 Cal.App.2d 117); *People* v. *Metzler*, 21 Cal.App. 80, 82 [130 P. 1192]); and evidence that such statements were willfully made with knowledge as to the falsity thereof. (*People* v. *Ross, supra*, at p. 427.) Moreover, one who procures another to commit perjury must know that the perjurer's statements are false. (*People* v. *Carpenter*, 136 Cal. 391 [68 P. 1027]; *People* v. *Ross, supra*.)

▆▆▆ The trial court herein defined subornation of perjury in the language of the statute (Pen. Code, § 127), and also gave the following instructions: (1) ''The elements necessary to sustain a conviction for subornation of perjury are that the false testimony given by a witness suborned in a civil action was material to the issues contained in the civil action and that such witness was 'procured' by the accused to so testify.'' (*People* v. *Nickell, supra*, 22 Cal.App.2d 117); and (2) A conviction of perjury, or subornation of perjury, ''may not be based upon the uncorroborated testimony of a single witness or upon evidence which is wholly circumstantial. Perjury must be proved by the testimony of two witnesses or of one witness and corroborating circumstances; and while the alleged perjured statement need not be denied in its exact words, there must be positive testimony by at least one witness of facts that are absolutely incompatible or physically inconsistent with the alleged perjured statement of the

accused. Corroborative evidence is additional evidence to the same point, and although, standing alone, it need not be sufficient to support a conviction, it must do more than cast a suspicion upon the accused. It must, in and of itself and independent of the evidence which it supports, tend to prove the commission of the offense and must tend with a reasonable degree of certitude to show that the accused is guilty as charged." (CALJIC 766.)

Supplementing the foregoing instructions on the subject of subornation of perjury, the crime of perjury was also extensively defined and at least five instructions were given on the subject. (CALJIC 761, 762, 763, 764, 767.) Defendant maintains that the court improperly refused a proffered instruction submitted by the defense to the effect that "[O]ne who procures another to commit perjury must know that the suborned person's statements are false. Before a defendant can be convicted of subornation of perjury, direct and positive testimony must be presented establishing that there was an agreement or understanding between the witness and the party charged with the offense that the witness did swear falsely to material facts in the action." (See *People* v. *Carpenter, supra,* 136 Cal. 391; *People* v. *Coffey, supra,* 161 Cal. 433.) The proposed instruction was proper and should have been given. However, the jury was advised that the defendant had to procure false testimony willfully in order to be guilty. (Pen. Code, § 127.) The word "procure" means "to persuade, induce, prevail upon, or cause." (Black's Law Dictionary [4th ed.] p. 1373.) The court specifically defined the word "willfully" as the making of a perjured statement with the consciousness that it was false and with the intent that it should be received as a statement of what was true. (CALJIC 767.) Boothe admitted during the course of defendant's trial that he had given false testimony in the civil action and, from such testimony, the jury could have concluded that there was an agreement between defendant and Boothe whereby the defendant induced Boothe to commit perjury and, manifestly, the jury so found. We therefore find that the members of the jury were adequately instructed on the law defining the crime of subornation of perjury, and that the instructions given by the trial court were sufficient to apprise them as to each and all of the elements of the offense.

Defendant objects to the phrase quoted in the given instruction based on *People* v. *Nickell, supra,* to the effect that "the alleged perjured statement of the accused" misled the

jury because Boothe was not a defendant. The word "accused" as referred to in the instruction clearly denotes the person actually committing the perjury, and the jury could not reasonably have confused the perjury with the defendant inasmuch as he did not testify in the consolidated civil actions, but acted solely in the role of an advocate.

Defendant objects to the reading of CALJIC 766, *supra*, on the subject of "corroboration" and maintains that the instruction is misleading and confusing. The instruction represents a correct statement of law and is merely an amplification of the provisions contained in section 1103a of the **Penal** Code. While Boothe's testimony in the civil action was certainly incompatible with his testimony in the criminal suit, the inconsistencies in Boothe's testimony go to the weight of the evidence rather than the validity of the instruction. The direct evidence appears positive in nature to the effect that Boothe did not see the fabricated letter until after it was supposedly signed by him.

The trial court rendered instructions on the subject of circumstantial evidence. Conversely, the court also instructed the jury that a conviction of subornation of perjury could not be based upon evidence which is only circumstantial, and defendant maintains that the two sets of instructions were contradictory and confusing. Instructions on circumstantial evidence should not be given in a prosecution for perjury. (See *People* v. *Di Giacomo*, 193 Cal.App. 2d 688, 698 [14 Cal.Rptr. 574].) However, in the *Di Giacomo* case, perjury was the only charge before the jury for its consideration. In the instant case, there were also nonperjury counts. While the trial judge should have limited the circumstantial evidence instructions to the nonperjury charges, no prejudice resulted. The jury was expressly instructed that direct evidence was required to sustain a perjury or subornation of perjury verdict. It would appear extremely remote that the defendant's subornation conviction resulted from circumstantial evidence because the jury was emphatically instructed that direct evidence was required to sustain such a conviction. Certainly the jury did not convict the defendant solely on the evidence which was introduced independently of Boothe's testimony. Manifestly, the defendant's conviction resulted from a combination of Boothe's testimony and credible corroborating evidence.

Defendant asserts that it was a violation of his

constitutional rights to permit the telephone recording of the conversation between him and his secreatry to be introduced in evidence. The recorded conversation of November 2 was admissible in evidence because it was made by the former secretary before she had been contacted by any law enforcement agent, and was accomplished without the assistance of any public official or employee inasmuch as she feared that the defendant would attempt to shift the responsibility for the preparation of the fraudulent letter from himself to her. Either party to a telephone conversation may record and publish it. (*Rathbun* v. *United States*, 355 U.S. 107, 110 [2 L.Ed.2d 134, 137, 78 S.Ct. 161, 163].)

However, a district attorney's investigator did record the conversation of November 18 between the defendant and Mary, which recording was made with the secretary's consent. The recording of a telephone conversation by California law enforcement agents with the consent of one of the conversing parties is permissible. (*People* v. *Malotte*, 46 Cal.2d 59, 63 [292 P.2d 517], appeal dismd. 352 U.S. 805 [1 L.Ed.2d 38, 77 S.Ct. 50].) Under federal law, each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation, and when such a conversation is overheard with the receiving party's consent, there is no violation of any right of privacy, of which the other party may complain, and no ''interception'' within the meaning of section 605 of the Federal Communications Act of 1934. (*Rathbun* v. *United States*, *supra*, 355 U.S. 107, 109 [2 L.Ed.2d 134, 136, 78 S.Ct. 161, 163].) The defendant's argument that the doctrine enunciated in *Berger* v. *State of New York*, 385 U.S. 41, 87 [18 L.Ed.2d 1040, 87 S.Ct. 1873], is applicable to the taped conversation herein is not persuasive inasmuch as *Berger* concerned the power of the State of New York to authorize its law enforcement agents to eavesdrop on telephone conversations without the consent of either party. *Malotte* and *Rathbun*, *supra*, relate to the right of a law enforcement agent to overhear a telephone conversation with the consent of one of the parties to the conversation. When one of the parties consents to, or directs, the overhearing of the communication at the moment it reaches him, there is no ''interception'' within the meaning of section 605 of the Federal Communications Act (See *Rathbun* v. *United States*, *supra*), and when a person discusses the commission of a crime with another, face to face or at a distance through the

use of any means of communication, there is no unreasonable invasion of privacy when the other party uses the conversation against him. (*People* v. *Malotte, supra,* 46 Cal.2d 59, 63.) In the case under review, unlike *Berger, supra,* the law enforcement agent was permitted to listen to the conversation with the consent of one of the parties thereto, to wit, the defendant's former legal secretary. This consent was the equivalent of the permission extended in *Malotte* and *Rathbun.* ▮ The fact that the conversation was not only overheard by the prosecutor's investigator, but preserved in the form of a recording, does not distinguish the factual situation herein from the circumstances presented in *Rathbun* and *Malotte.* The recording of the conversation between the defendant and his former secretary constitutes clear proof as to the veracity thereof. The recording of the conversation was not that type of indiscriminate eavesdropping found to be constitutionally objectionable in *Berger.*

▮ Defendant also urges that he was deprived of his right to counsel because the recording of November 18 was made by the district attorney's investigator just four days before the case went to the grand jury, and, according to the defendant, the failure of the prosecution's investigator to advise him of his rights to counsel and to remain silent (*Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]) renders any evidence of his recorded statements inadmissible. However, the rights formulated in *Escobedo* and *Dorado* apply only to extrajudicial statements made after the accusatory stage has been reached and the defendant has been taken into custody. (*People* v. *Stewart,* 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].) There is a definite distinction between pre-indictment and post-indictment investigation, and there is no deprivation of the right to counsel in the pre-indictment stage by the recording of a telephone conversation involving a suspect where the other party to the conversation consents thereto. (*Ballard* v. *Superior Court,* 64 Cal.2d 159, 168-170 [49 Cal.Rptr. 302, 410 P.2d 838].)

Defendant next urges that the trial court erred in failing to instruct the jury that the ''evidence of oral admissions of a party [should be viewed] with caution.'' (Code Civ. Proc., §.2061, subd. 4 [repealed effective January 1, 1967]; CALJIC .29-D.) Originally, the defendant urged that the instruction should have been given by the trial court on its own initiative. Subsequently, the Attorney General and appellant's counsel

fairly conceded that the defendant's trial attorney objected to the giving of the cautionary instruction in an unreported conference held in the trial judge's chambers, and by reason of defense counsel's objection, such cautionary instruction was not given.

A cautionary instruction on defendant's oral admissions must generally be given even without a request therefor. (*People* v. *Ford,* 60 Cal.2d 772, 799 [36 Cal.Rptr. 620, 388 P.2d 82], cert. den. 377 U.S. 940 [12 L.Ed.2d 303, 84 S.Ct. 1342] ; *People* v. *Carswell,* 51 Cal.2d 602, 608 [335 P.2d 99]), and failure to give the cautionary instruction where appropriate may constitute error. (*People* v. *Deloney,* 41 Cal.2d 832, 840 [264 P.2d 532].) However, not every failure to render the cautionary instruction constitutes prejudicial error. (*People* v. *Poindexter,* 51 Cal.2d 142, 151 [330 P.2d 763] ; *People* v. *Riley,* 35 Cal.2d 279, 286 [217 P.2d 625].) Significantly, the objection by the defense counsel to the giving of the cautionary instruction brings the doctrine of "invited error" into play. (See *People* v. *Davenport,* 240 Cal.App.2d 341, 346 [49 Cal.Rptr. 575].) Moreover, irrespective of the "invited error" doctrine, the trial court's action in refusing to render the cautionary instruction in the face of defense counsel's objection was of a harmless nature. The defendant's admissions herein were rendered in two forms: (1) in unrecorded conversations with his secretary, and (2) in conversations with his secretary which were taped and recorded. It was unnecessary to give the cautionary instruction with respect to the recorded admissions. The cardinal reason for the existence of the rule requiring the cautionary instruction with respect to oral admissions is based on the inability of a person to repeat exactly the words of another person. (*People* v. *Gardner,* 195 Cal.App.2d 829, 832 [16 Cal.Rptr. 256], cert. den. 369 U.S. 806 [7 L.Ed.2d 552, 82 S.Ct. 647].) This common failure of memory or inability to recall a conversation with exactness does not exist where there is a reproduction by mechanical means of the declarant's voice and words, and where admissions are made and preserved through recording devices, the cautionary instruction need not be given with reference to such admissions. (*People* v. *Gardner, supra,* at p. 833.) Obviously, a recording is more reliable and satisfactory evidence than testimony from memory; is more trustworthy; it reproduces the very words used by the person who made the statement. (*People* v. *Vetri,* 178 Cal.App.2d 385, 395-396 [2 Cal.Rptr. 795].) Consequently, the trial court committed no

error in failing to render the cautionary instruction with respect to the taped admissions. (*People* v. *Hines,* 61 Cal.2d 164, 173 [37 Cal.Rptr. 622, 390 P.2d 398].)

 The unrecorded conversations involving the defendant and his secretary wherein the defendant indicated that he was in serious trouble and threatened to commit suicide as a result thereof were of an incriminating nature, but inasmuch as the jury had been advised by the trial court to consider the testimony of the accomplice Boothe with distrust, and in view of the fact that the defendant's guilt was established by evidence of a conclusive nature, the trial court's failure to render the cautionary instruction constituted harmless error, which error, as indicated previously, was invited by the defendant.

 Finally, the defendant maintains that the trial court committed prejudicial error in failing to admonish the jury at each adjournment to the effect that they should not discuss the case with anyone or form or express an opinion until the matter had been submitted to them for their decision. The trial commenced on April 4, 1966. and concluded on April 23, 1966. Defendant initially maintained that there had never been a stipulation waiving the admonition, but an augmentation was ordered herein which reflects that on April 6, 1966, the prosecution and the defense did stipulate that it would not be necessary for the trial judge to admonish the jury at each recess or adjournment.

The jury must be admonished at each recess or adjournment that it is their duty not to converse among themselves or anyone else on a subject connected with the trial or to form or express an opinion thereon until the cause is finally submitted to them. (Pen. Code, § 1122.) The record in a criminal case should disclose that the admonition was given by the court in accordance with section 1122 of the Penal Code. (*People* v. *Maughs,* 149 Cal. 253, 265 [86 P. 187].) However, failure to comply strictly with the requirements requiring the admonition of the jury would not justify a reversal of the conviction when the defendant fails to establish in what manner he was prejudiced by such failure. (*People* v. *Witt,* 170 Cal. 104, 109 [148 P. 928]; *People* v. *Williams,* 128 Cal.App.2d 458, 464 [275 P.2d 513].)

The record herein discloses that not only did counsel agree that the admonition be waived, but that on at least two occasions the jury was admonished as required by section 1122 of the Penal Code. Moreover, the defendant has failed to show in

what manner prejudice resulted by reason of the failure to admonish.

Judgment affirmed.

McCabe, P. J., and Thompson (Raymond), J. pro tem.,* concurred.

A petition for a rehearing was denied October 5, 1967, and appellant's petition for a hearing by the Supreme Court was denied November 1, 1967.

_____

*Assigned by the Chairman of the Judicial Council.