[Crim. No. 4722. First Dist., Div. Two. May 13, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROSS KENT KELLER, Defendant and Appellant.

Nathan S. Smith, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr. and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a judgment of conviction of assault with a deadly weapon (pocket knife) entered

upon a jury verdict. (Pen. Code, § 245, subd. (a).) He was sentenced to state prison. A prior felony conviction for which he had also been sentenced to state prison was charged in the Information and admitted by defendant.

Prosecuting witness Osmundson was a private citizen who had volunteered to act as an undercover narcotics agent for the San Francisco Police Department. He testified in December 1963, in a narcotics case against an acquaintance of defendant.

Osmundson testified herein that on January 13, 1964, about 10:15 p.m., he entered a restaurant on Turk Street; that defendant and one Jimenez were there; that defendant asked him to step outside, that he wanted to talk to him; that he, defendant and Jimenez stepped outside; that defendant said to him, " 'You testified in court, you are a snitch, I'm going to fix you' "; that defendant swung at him with his fists but missed; that defendant then asked if anyone had a "blade"; that one "Al" produced a pocket knife, opened it, and threw it to defendant; that defendant came at him with the open knife, saying, " 'I'm going to kill you' " (the knife blade was 1½ inches in length) ; that he, Osmundson, brought out a pair of pliers which he had in his pocket.

Osmundson further testified that Jimenez got behind him and held his arms, the defendant slashed at him twice but did not touch him either time. Officer Wydler of the San Francisco Police Department was nearby. He drew his revolver, Jimenez released his hold, and defendant dropped the knife.

Wydler testified that he and Officer Schneider were in plain clothes and were covering Osmundson, who had gone into the restaurant for the purpose of making a "buy" of narcotics; that defendant pursued Osmundson down Turk Street with a knife in his hand, saying " 'You have testified in court, you are a snitch, I'm going to kill you' "; that Jimenez got behind Osmundson and held him; that defendant was making forward motions with the hand holding the knife; that he, Wydler, drew his gun at this point and stopped further activity; that defendant stated that "Ozzie had produced a corkscrew, and that's how it all started."

Undercover Police Officer Brush testified that he was inside the restaurant; that he heard Osmundson yell " 'Help' " and saw defendant, Jimenez and "Al" moving down Turk Street after him; that he did not see a knife.

Jimenez was the remaining prosecution witness. He testified that as he was walking down Turk Street he heard some "hol-

lering''; that he saw Osmundson ''walking backwards,'' with defendant 2 or 3 feet away and calling Osmundson a '' 'snitch' ''; that ''There were a couple of punches thrown —none were connected—and then Mr. Osmundson . . . made a motion towards his pocket, and I saw a flash. I wasn't sure whether it was a corkscrew or a can-opener or even a gun. . . . Without thinking, I ran out and I grabbed him [Osmundson]''; that he heard defendant say, '' 'I'm going to kill you, you snitch' ''; that he saw a ''flash'' in defendant's hand and ''I naturally assumed that he [defendant] also had a knife''; that some officer pulled out a gun and he, Jimenez, ceased any further activity.

When the prosecution rested, the defense read into the record the testimony given at the preliminary hearing by Police Officer Schneider, Wydler's partner. Schneider's testimony was that he had seen Osmundson and two other men come out of the restaurant but, not noticing anything unusual, went into a nearby cigar store and apparently was in there when the ''action'' described by the other witnesses took place. No other evidence was offered by defendant.

■ In its argument to the jury the prosecution commented upon the failure of defendant to testify and the court instructed the jury on the effect of such failure. The instruction given is substantially identical[1] with that given in *Griffin* v. *California*, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], discussed hereafter.

The prosecution stated in argument to the jury: ''Now, the Defendant did not testify. On that fact alone you have no

---

[1]We have verified this by an examination of the Griffin transcript. The instruction is as follows: ''It is the Constitutional right of a Defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the Defendant can reasonably be expected to deny or explain, because of the facts within his knowledge, if he does not testify, the jury may take that failure into consideration as tending to indicate the truth of such evidence, and as indicating that among the inferences that may be reasonably drawn therefrom, those unfavorable to the Defendant are the more probable.

''The failure of a Defendant to deny or explain evidence against him does not, however, create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the Prosecution of its burden of proving every essential element of the crime and guilt of the Defendant beyond a reasonable doubt.

''In deciding whether or not to testify, the Defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on the Defendant's part will supply a failure of proof by the People so as to support by itself a finding against him on any such essential element.''

right to automatically assume he is guilty. The Law doesn't so provide. Our Constitution allows any Defendant in a criminal case to make a choice as to whether or not he will testify. The People can never call a Defendant in a criminal case, and he has the absolute right to choose. So, there is no automatic prejudice that leads to a total conviction because a man doesn't testify.

"But there are certain ways you may consider this. You have a right to consider that if you feel there were things the Defendant had within his knowledge to explain, statements that are made by other witnesses, or the circumstances or anything like that, and he doesn't testify, you may draw inferences that the evidence against him is probably true and that the explanations he could have made would have been against him, in truth, and truly.

"I would like to emphasize that again. You may not—I can't ask you to convict just because he didn't testify, but you certainly have a right to consider he didn't explain what happened in the Copper Pit, what happened on the sidewalk in front of it, what happened in the middle of the street and what happened in the presence of Officer Wydler. . . . . . . .

"Now, in regards to why he didn't put the Defendant on the witness stand, Mr. Davis [defendant's counsel] says rather grandly, 'I don't want to waste your time.' Now, time is of no consequence in a trial and I suggest that the time Mr. Keller had been on the stand, had he been placed on the stand, could have been well used by him. He is telling you not only that it was self-defense, but why he asked Mr. Osmundson to go out in the first place. I think that is a logical question and you might wonder about that. . . . I suggest to you, when you are evaluating the evidence, it might have been very interesting to know what the Defendant had to say about that. . . .

"So, I suggest to you, despite minimization and ridicule and self-defense, which falls flat, because the Defendant himself doesn't ever tell you or deny the allegations with intent to kill, what do you have left?''

The United States Supreme Court held, in *Griffin* v. *California, supra* (April 28, 1965), that it was reversible error in a criminal case tried in a state (California) court for the trial prosecutor to comment to the jury on defendant's failure to testify and for the trial court to give the instruction to the jury which we have quoted above. The ground of decision was that this violated the self-incrimination clause of the Fifth Amendment to the United States Constitution, which amend-

ment was made applicable to the States by the Fourteenth Amendment in *Malloy* v. *Hogan,* 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653].

██ Here the main issue raised by the defendant at the trial was self-defense. He relied upon the testimony of Jimenez, called by the prosecution, and on the testimony of Officer Wydler, admitted without objection, that defendant's explanation to him was that ''Ozzie had produced a corkscrew, and that's how it all started.''

Defendant also asserts that a knife having a single blade 1½ inches in length is not a deadly weapon (cf. *People* v. *Arguilida,* 85 Cal.App.2d 623, 625 [193 P.2d 478]) and that defendant had no intent to actually use the knife on Osmundson (cf. *People* v. *Marcus,* 133 Cal.App.2d 579, 581 [284 P.2d 848]).

Had the jury accepted any of these arguments, it would not, of course, have found defendant guilty of assault with a deadly weapon.

After reviewing the entire cause, including the evidence, we are of the opinion that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error arising from the argument of the prosecution and the giving of the instruction on the subject of defendant's failure to testify. It is therefore necessary to reverse the judgment (Cal. Const., art VI, § 4½; *People* v. *Watson,* 46 Cal. 2d 818, 836 [299 P.2d 243]) and it is so ordered.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied June 11, 1965.