[Crim. No. 2346.    Fourth Dist., Div. Two.    Feb. 23, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. LAWRENCE DAVENPORT, Defendant and Appellant.

Lawrence W. Novack for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

McCABE, P. J. — By an information, defendant was charged with a violation of section 211, Penal Code, with a prior conviction of the crime of burglary, a felony. It was alleged in the information that a coparticipant in the robbery was armed with a deadly weapon. Prior to trial, defendant admitted the prior conviction. The jury found defendant guilty as charged and fixed the degree in the first degree.

In Victorville, on January 5, 1965, Sherlie Thompson was operating a grocery store. At about 6 p.m. of that day, three colored men entered his store and robbed him of some $250. One of the men pointed a revolver at Thompson, told him to get a paper bag which he did. The cash register was opened and the money from it, consisting of silver and paper money of denominations of one, five and ten dollars, was put into the bag. Most of the paper money was of the one dollar denomination. Thompson was directed to go to the rear of the store where his hands were tied and he was ordered to lie down. Later, when he arose, the men, the bag and the money were gone. Thompson did not see the defendant or the three men arrive at his store, or see defendant in his store, or see them leave the premises. He did not know how they left the area. At the trial he was unable to identify the defendant.

Approximately an hour and a half after the robbery, a Highway Patrol officer observed a white Chevrolet sedan on the Barstow Freeway. Defendant was driving the vehicle which had three other male occupants, all of whom were of the same race as those who had entered the store. The officer called the dispatcher for a check of the license number of the Chevrolet and the vehicle was stopped. At this point, the officer was informed by the dispatcher that three colored men

were wanted for armed robbery in Victorville and two ''back-up'' patrol cars were on the way. After the arrival of these units, the occupants of the Chevrolet were ordered out of the vehicle. One broke and ran. Defendant, as ordered, lay down on the ground. Defendant was searched. In his wallet, taken from his right rear pocket, were one-dollar bills, four five-dollar bills, and one two-dollar bill. His left front pocket contained 46 one-dollar bills. During the search of his person, defendant, without any question asked of him, voluntarily said, ''The money in the wallet is mine. Don't get it mixed up with the rest of the money.''

The law enforcement officers took defendant and the other three to the Barstow police station. Officer Wagner informed defendant he was with the sheriff's office and that defendant was under arrest by a highway patrol officer. Further, he advised defendant of his right to have an attorney at all times, he could remain silent, if he did say anything it might be used against him, and that he was a suspect. No conversation took place at the Barstow police station. Shortly after this event, defendant was taken across the street to the sheriff's substation, Victorville. The same officer testified that thereafter on each contact he informed defendant of his rights in the same manner as he had done before. Additionally, the officer informed defendant he could use the telephone to contact an attorney. At the Victorville substation on the day following the robbery, the officer again informed defendant of his rights in the same manner as he had done the previous evening. On this occasion, defendant stated he knew he didn't have to say anything until he spoke with his attorney. There was no evidence that defendant was coerced, threatened or offered any benefits, nor does the defendant contend these elements were present. The officer testified the defendant made the following statement to the officer: ''He advised us that, yes, he did come to Victorville and that he had parked in front of a market; however, he did not go in the market and that the way that the other defendants came out laughing and joking, that he wouldn't think that there was an armed robbery being involved. Several times we got on the money. He had 46 singles, which were recovered in one of his front pockets and had some money in his wallet, and he was asked about this particular amount of money being 46 single dollar bills in his pocket and he said he always carried that kind of money around because it looked like he had a big bank roll. I advised him that I knew that he was not telling

the truth, and then he somewhat changed his story and said that he could prove that he had this amount of money in San Bernardino by several witnesses that knew that he had the money prior to leaving San Bernardino. I told the defendant that he was not telling me the truth from what information we had. He changed it and said, 'I can at least prove I had $40,' I believe he told me, and he said the two-dollar bill and the money in his wallet were his, because the two-dollar bill was a good luck piece; he was quite interested in getting it back because it was his money and he had it for a long time, the good luck piece; and one of the other subjects, Mr. Glenn, had given him $15 for the car on that date, and so at least $40 was his and he could prove it.''

In searching the stopped vehicle, the officer found in a paper bag under the right front seat $32.75 in quarters, $3.50 in half-dollars. Also, they found a loaded German-made revolver with a 2-inch barrel, three boxes of 22-caliber cartridges, three packages of lunch meat and one empty lunch meat package.

On this appeal, defendant contends (1) the evidence is insufficient to support the verdict; (2) there was prejudicial error in the prosecution's comment to the jury regarding defendant's failure to take the witness stand; (3) the trial court committed prejudicial error in instructing the jury regarding defendant's failure to take the witness stand (CALJIC No. 51-revised) ; and (4) the trial court erred in not granting a new trial.

To sustain his contention of prejudicial error, defendant cites *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] ; *People* v. *Collier,* *(Cal.App.) 44 Cal.Rptr. 465; *People* v. *Odom,* 236 Cal.App.2d 876 [46 Cal.Rptr. 453]; *People* v. *Keller,* 234 Cal.App.2d 395 [44 Cal.Rptr. 432].

In *Griffin, supra,* as in this instant case, the defendant did not take the witness stand, the prosecution commented upon it, and the court gave an instruction to the jury identical to the one given in the instant case. The Supreme Court condemned as error the comment of the prosecution and condemned the jury instruction given by the court. In other words, either act was error since the defendant's rights under the Fifth Amendment applicable to state proceedings through the Fourteenth Amendment were violated. The

---

*A rehearing was granted on June 11, 1965. The final opinion is reported in 237 Cal.App.2d 259 [46 Cal.Rptr. 887]. Hearing in Supreme Court denied.

Supreme Court determined the errors were prejudicial and reversed the judgment of conviction.

The first aspect of *Griffin* does not encompass our factual situation. Here the defendant first brought to the attention of the jury, and at length, his absence from the witness stand. Thus, the coercive effect, the inquisitorial aspect, the inferential facet described in *Griffin* are absent. The defendant in his closing argument stated: "Now, I know the prosecution is going to say and comment on the fact that Mr. Davenport did not take the witness stand. And you will recall at the outset of this trial that you had no quarrel with the Defendant's constitutional rights in a criminal trial that he may not be compelled to testify. Now, ladies and gentlemen, I choose in this case to rely on the state of the evidence as it was when the Plaintiff, the prosecution closed his case. I chose not to call the Defendant to the witness stand because I felt the prosecution did not prove its case beyond a reasonable doubt. It was my choice. If you are going to hold it against somebody, hold it against me and not my client. Don't say to yourself when you go into the jury room, 'He didn't take the witness stand. Therefore he is guilty.' Please don't say that, because it is an inherent constitutional right. It's a right given to every man, woman and child ever accused of any crime. I chose not to call him to the witness stand because I feel this case absolutely is void of any concrete evidence and that the prosecution has not met its burden. If I made a mistake, don't hold it against my client, please."

After this statement was made by defendant's counsel, the prosecution responded: "Counsel says, I was going to comment on the Defendant not taking the stand. He has the constitutional right. Counsel says that it's my decision. 'My' being Mr. Novack. If anybody's to blame, blame me. Don't blame him. And he keeps referring to these boys, these guys. Armed robbery, and he's referring to them as boys. Don't blame this 'boy.' Well, we are not going to comment too much on it except I believe there is an instruction. You can draw an inference from that, too, why he didn't take the stand. He's got a constitutional right. He's an American. Nobody can force him to get on the stand. But were you there? I wasn't there. So it would be reasonable that you would expect somebody who was there to get up and tell us what happened, wouldn't you?"

The only case cited to us by defendant wherein it may be that a defendant first commented regarding his

absence from the witness stand is *People* v. *Keller, supra,* 234 Cal.App.2d 395 [44 Cal.Rptr. 432]. In *Keller,* the appellate court quotes the comment of the prosecution. It is not clear whether the prosecution first entered the dangerous and mined field of comment, for in the quote it is said: ''. . . Now, in regards to why he didn't take the witness stand, Mr. Davis (defendant's counsel) said rather grandly, 'I don't want to waste your time' . . . .''

Defendant and appellate decisions of this state subscribe to the position that if the prosecution comments about defendant not taking the witness stand the very act is error. Yet, if it is the comment alone which is the nexus of the constitutional prohibition, the defense counsel, as in the instant case, may sow the seeds of his appeal by commenting on his client's failure to take the stand during the trial. If the defendant's principle is applied to the present case, the invited error doctrine must, in this particular area of the law, seek oblivion.

■ Succinctly put, the invited error doctrine prevents a party to a legal action from profiting where he causes or invites the error. See: *People* v. *Jones,* 205 Cal.App.2d 460 [23 Cal.Rptr. 418]; *People* v. *Mason,* 184 Cal.App.2d 317 [7 Cal.Rptr. 627]; *Jentick* v. *Pacific Gas & Electric Co.,* 18 Cal.2d 117 [114 P.2d 343]; *Lynch* v. *Birdwell,* 44 Cal.2d 839 [285 P.2d 919]; *Gray* v. *Ellis,* 164 Cal. 481 [129 P. 791]; *Hixson* v. *International Harvester Co.* 219 Cal.App.2d 88 [32 Cal.Rptr. 905].

■ Defendant, by insisting the prosecution may not comment after defendant has, and at length, introduced the subject, presents an irrefragable dilemma to the prosecution, jury and judge. We are not deciding that defendant may not, within proper limits, state his constitutional rights to the jury, but we do decide that a defendant may not comment at length as was done in the instant case. For if allowed to do so and then insist that no one else except he can refer to his absence from the witness stand, the very error which he complains of is explosively exaggerated by the very silence of all other persons.

As to defendant's lengthy comment on his rights and the mild reply of the prosecution, the error was invited by defendant and he may not profit from it.

The other facet of *Griffin, supra,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], i.e., the instruction given by the court, cannot be similarly determined by the invited error doctrine

even though the defendant joined in the request for the instruction. We have not been cited to nor have we found any case in which the protective coating of the invited error doctrine cloaks an instruction proposed by both parties and given by the court. We do not extend this doctrine into this area of the law and it will be given no application to the facts before us.

By law, counsel are required to submit jury instructions to the court which they believe properly state the law. (Code Civ. Proc., § 607a.) However, it is incumbent upon the judge to give such instructions on the law to the jury which are proper and applicable to the case at the time they are given. (*People* v. *Baldwin,* 42 Cal.2d 858 [270 P.2d 1028] ; *People* v. *Baker,* 42 Cal.2d 550 [268 P.2d 705] ; *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33] ; *Sills* v. *Forbes,* 33 Cal.App.2d 219, 228 [91 P.2d 246].) In the instant case, the trial court could not have known that *Griffin* or any other case involving CALJIC No. 51 (revised) would be decided adversely to that instruction which had its cachet in the Constitution of California.

That it was error to give this instruction was decided in *Griffin,* and in that case, it was decided it was prejudicial error requiring reversal. It will be our duty to decide in this case whether such error was prejudicial requiring reversal.

After reviewing the entire record, including the evidence, the very thin threads which identify the defendant and entangle him in this offense either as a principal or an accomplice, and the giving of CALJIC No. 51 (revised) condemned by *Griffin,* we are of the opinion that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. It is therefore necessary to reverse the judgment. (Cal. Const. art. VI, § 4½ ; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

Judgment reversed.

Kerrigan, J., and Tamura, J., concurred.

A petition for a rehearing was denied March 21, 1966.