Filed 10/28/22  P. v. Mendez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS MENDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B312907<br>(Super. Ct. No. VA122009)<br>(Los Angeles County) |

Juan Carlos Mendez appeals from the 2021 order denying his petition to vacate his second degree murder conviction and to resentence him pursuant to Penal Code former section 1170.95, (now section 1172.6).[1]  In 2014 a jury convicted him of the second degree murder of Randy Telles (§§ 187, subd. (a), 189) and the willful, deliberate, and premeditated attempted murder of Christine Telles (§§ 664, 187, subd. (a)).  He was sentenced to

_____

[1] All statutory references are to the Penal Code.  Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)  We will refer to the statute as section 1172.6.

prison for 15 years to life for second degree murder plus a consecutive term of life with the possibility of parole for attempted murder.

Mendez and his codefendant, Ovidio Margarito Salazar, were tried simultaneously before separate juries. Salazar was convicted of second degree murder, but was acquitted of attempted murder. We affirmed Mendez's and Salazar's convictions in an unpublished opinion, *People v. Mendez and Salazar* (March 19, 2015, B254810) (*Mendez I*).[2]

We conclude that, as to his second degree murder conviction, Mendez is entitled to a new section 1172.6 evidentiary hearing because the trial court apparently relied exclusively on our prior opinion's factual summary as evidence of his guilt. Because there were separate juries and some evidence recited in our opinion was not admitted as to Mendez, the trial court's consideration of our opinion may have misled it. Appellate courts have construed a 2021 amendment of section 1172.6, subdivision (d)(3) as prohibiting reliance upon a prior opinion's factual summary. The amendment was enacted by Senate Bill No. 775 (S.B. 775) and became effective on January 1, 2022. (Stats. 2021, ch. 551, § 2.)

On the other hand, Mendez's attempted murder conviction is not eligible for section 1172.6 relief because the jury was not instructed on the natural and probable consequences doctrine. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*).)

Accordingly, as to the second degree murder conviction, we reverse the order denying Mendez's petition and remand with

---

[2] The People have requested that we take judicial notice of our unpublished opinion in *Mendez I* and portions of the record in the prior appeal. We grant the request, which is unopposed.

directions to conduct a new evidentiary hearing in compliance with section 1172.6, subdivision (d)(3) as amended by S.B. 775. The conviction for attempted murder remains valid.

*Facts*

The following summary of the facts is taken verbatim from our prior unpublished opinion:

"On the evening of September 19, 2011, Randy . . . Telles, Christine Telles (Randy's cousin), and Quennie Reyna 'burglarized' Mendez's house in Bell Gardens. Randy waited in a U-Haul truck while Quennie and Christine removed the window air conditioner, entered Mendez's house and took a laptop computer. A neighbor saw the women jump a fence and run to the U-Haul truck.

"When Mendez returned home, a neighbor said that Quennie and Christine had 'burglarized' his house. [Footnote omitted.] . . .

". . . Mendez told Jorge . . . Guevera that Christine and Quennie broke into his house and stole his laptop. Mendez suspected that a U-Haul truck was used. Guevara knew where Randy and the two women lived and offered to help Mendez get the laptop back.

"Mendez said that he needed Salazar's help and picked him up several hours after the burglary. Mendez, Salazar, and Guevara drove to Quennie's house in South Gate looking for the U-Haul truck.

"Randy and Christine had just dropped Quennie off and were looking for a place to park when Mendez drove by in a Ford Expedition. Mendez recognized Randy, turned around, and drove back towards the U-Haul truck. Randy sped off in reverse, turned the truck around, and fled with Mendez in pursuit.

3

Mendez drove through a red light and stop signs in residential areas at speeds of up to 50 miles per hour.

"Salazar drew an AMT 45 semiautomatic handgun from his waistband and Mendez took his foot off the accelerator for a second. Salazar told Mendez in a 'non-angry voice' to 'keep going' and follow the truck. Mendez sped up and bumped into the back of the truck. Salazar stuck his arm out the window, took aim, and fired three shots. One bullet hit the truck tailgate and a second bullet shattered the rear window, striking Randy in the head.

"Christine was crouched down on the truck floor as it crashed into an apartment complex parking lot. Peeking out the back window, she saw Mendez and Salazar in the Ford Expedition. Mendez had a shocked look on his face, backed up, and sped away. Mendez dropped Salazar off and drove Guevara back to Bell Gardens.

"Salazar told the police that he fired three shots and hid the AMT 45 in his car air filter. Salazar claimed that Mendez brought the handgun and gave it to him to use. In a second recorded statement, Salazar said that Mendez gave him the handgun a week before and told him to bring it the night of the shooting.

"At trial, Mendez denied knowing that Salazar had a handgun. . . ." (*Mendez I, supra*, B254810, slip opn. at pp. 2-3.)

*Statutory Framework*

Section 1172.6 was added to the Penal Code by Senate Bill No. 1437 (S.B. 1437) and became effective on January 1, 2019. (Stats. 2018, ch. 1015, § 4.) In S.B. 1437 the Legislature declared, "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to

4

murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To achieve this goal, S.B. 1437 amended section 189 insofar as it pertains to the felony-murder rule. (Stats. 2018, ch. 1015, § 3.) It also amended section 188 to add subdivision (a)(3), which "eliminates natural and probable consequences liability for first and second degree murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 849.)

Section 1172.6 gives retroactive effect to the changes in sections 188 and 189. Effective January 1, 2022, section 1172.6 was amended by S.B. 775. As amended, section 1172.6 provides, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when" certain conditions apply. (*Id*., subd. (a).)

One of the conditions is that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a)(1).) Another condition is that "[t]he petitioner could not

presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a)(3).)

"[T]he court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced . . . ." (*Id.*, subd. (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (d)(3).)

*Theories of Murder Presented to the Jury*

The jury was instructed on the following theories of murder: (1) express malice murder, (2) implied malice murder, (3) second degree felony murder, and (4) directly aiding and abetting the commission of murder. The aiding and abetting instructions did not mention the natural and probable consequences doctrine.

The second degree felony-murder instruction was based on the felony of shooting at an occupied vehicle. In our prior opinion, we concluded that the instruction was erroneous because "[w]hen the underlying felony is assaultive in nature, the felony

6

merges with the homicide and cannot be the basis for a felony-murder instruction.  (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.)"  (*Mendez I, supra*, B254810, slip opn. at p. 4.)  Mendez "not[ed] that the prosecution only argued second degree . . . felony murder."  (*Id.* at p. 6.)  But we found the erroneous instruction "harmless beyond a reasonable doubt."  (*Id.* at p. 5.)

> *Mendez Forfeited Claim that Trial Court Erroneously*
> *Relied on Our Prior Opinion Because It Is "Incorrect"*

At the time of Mendez's evidentiary hearing on April 13, 2021, section 1172.6, former subdivision (d)(3) provided that "[t]he prosecutor and the petitioner may rely on the record of conviction . . . ."  An appellate opinion was "generally considered to be part of the record of conviction."  (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

According to the statement of facts in our prior opinion, "Salazar [told the police] that Mendez brought the handgun and gave it to him to use.  In a second recorded statement, Salazar said that Mendez gave him the handgun a week before and told him to bring it the night of the shooting."  (*Mendez I, supra*, B254810, slip opn. at p. 3.)  In our discussion of the merits of Mendez's prior appeal, we concluded:  "Mendez's guilt as an aider and abett[o]r was established.  He recruited Salazar's help and told him to bring the handgun."  (*Id.* at p. 6)

Mendez claims, and the People do not dispute, that Salazar's statements to the police "were heard only by [Salazar's separate] jury."  The statements were not admitted in evidence before Mendez's jury.  Therefore, Mendez argues, Salazar's statements "were not part of [Mendez's] record of conviction." (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 (*Flores*) ["our

7

opinion in [a co-defendant's] appeal [from judgment of conviction] is not part of the record of conviction in petitioner's case"].) "Moreover," Mendez continues, "there was no other evidence presented to [Mendez's] jury that he ever had a gun, gave one to Salazar, or told Salazar to bring a gun."

In finding Mendez guilty of second degree murder at the section 1172.6 evidentiary hearing, the trial court relied in part on Salazar's statements to the police. The court said: "Mendez's guilt as an aider and abettor could be established today. He recruited Salazar's help and told him to bring the handgun." "Mendez provided the handgun . . . to Salazar and brought it to him."

Mendez contends that "[t]he denial of the [section 1172.6] petition must be reversed since the trial court relied exclusively on the prior incorrect appellate opinion," i.e., incorrect in that it "failed to clarify that Salazar's statements were admitted only in front of [Salazar's] jury." (Bold omitted.) The contention is forfeited.

In the trial court, both the People and Mendez relied on the prior opinion's statement of facts. In his reply to the People's opposition to the section 1172.6 petition, Mendez noted, "Salazar claimed that Mendez brought the handgun and gave it to him to use. In a second recorded statement, Salazar said Mendez gave him the handgun a week before and told him to bring it the night of the shooting." In his opening appellate brief, Mendez observes: "The defense reply also said that [Mendez] gave the handgun to Salazar." (Bold omitted.) "Defense counsel did not take issue with the appellate opinion . . . . He did not say he had obtained or attempted to obtain, much less read, the actual trial transcripts." Because in the trial court Mendez relied upon the

opinion as presenting an accurate summary of the evidence, he is "precluded from taking the contrary position" on appeal. (*People v. Navarette* (1976) 54 Cal.App.3d 1064, 1071-1072.) Any error by the court was invited by Mendez.

"The 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. [Citation.] . . . At bottom, the doctrine rests on the purpose of the principle, which . . . prevent[s] a party from misleading the trial court and then profiting therefrom in the appellate court." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) The doctrine applies in both civil and criminal proceedings. (*People v. Davenport* (1966) 240 Cal.App.2d 341, 346-347.)

*Mendez Forfeited Claim that the Admission of Salazar's Statements Violated the Confrontation Clause*

Mendez claims that the admission of Salazar's statements to the police violated his Sixth Amendment right to confront witnesses against him. The claim is forfeited because Mendez failed to object to the admission of Salazar's statements. (Evid. Code, § 353, subd. (a); *People v. Alvarez* (1996) 14 Cal.4th 155, 186 ["Defendant has not preserved his [Sixth Amendment] claim for review" because "[t]here was neither a 'specific' nor 'timely' objection below predicated on the Sixth Amendment's confrontation clause"].)

In any event, the retroactive relief provided by section 1172.6 is an act of lenity by the Legislature that does not implicate a petitioner's Sixth Amendment rights. (See *People v. Hernandez* (2021) 60 Cal.App.5th 94, 111; *People v. Silva* (2021) 72 Cal.App.5th 505, 520 ["The Sixth Amendment applies '[i]n all

criminal prosecutions.'  (U.S. Const., 6th Amend.)  A petition under section [1172.6] is not a criminal prosecution"]; *People v. James* (2021) 63 Cal.App.5th 604, 610 ["we agree with the many courts that have held that a convicted person litigating a section [1172.6] petition does not enjoy the rights that the Sixth Amendment guarantees to criminal defendants who have not yet suffered a final conviction"]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["the retroactive relief [defendants] are afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis.  Rather, the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights"].)

*S.B. 775 Has Been Construed to Preclude*

*Consideration of a Prior Opinion's Factual Summary*

Mendez argues that, as to his conviction of second degree murder, the order denying his petition must be reversed because the trial court relied exclusively on our prior opinion's factual summary as evidence of his guilt.  Effective January 1, 2022, S.B. 775 amended section 1172.6, subdivision (d)(3) to permit consideration of a prior appellate opinion's recitation of the procedural history of the case.  As amended, section 1172.6, subdivision (d)(3) provides in relevant part:  "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  *The court may also consider the procedural history of the case recited in any prior appellate opinion*."  (Italics added.)

10

The issue is whether the above-italicized language precludes the trial court from considering a prior appellate opinion's statement of facts. The published opinions that have examined this issue have concluded that it does have such a preclusive effect. In *People v. Clements* (2022) 75 Cal.App.5th 276, 292 (review den. May 11, 2022), the court determined that the "specificity" of the italicized language "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing." (See also *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9 ["Senate Bill 775 prevents a trial court from relying on facts recited in an appellate opinion to rule on a petition under section [1172.6], as the statute now provides that 'the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law' and 'the *procedural history* of the case recited in any prior appellate opinion.' . . . On remand, . . . the trial court may not rely on the opinion's factual summary without [petitioner's] acquiescence"]; *Flores, supra,* 76 Cal.App.5th at p. 988 ["the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing"].)

*Mendez Did Not Forfeit His Right to Challenge Trial Court's Consideration of Prior Opinion's Factual Summary*

We cannot fault Mendez for not objecting to the trial court's consideration of our prior opinion's statement of facts. When the evidentiary hearing was conducted, trial courts could consider a prior opinion's factual summary. In *People v. Williams* (2020) 57 Cal.App.5th 652, 660-663, the appellate court held that the trial court had properly considered reliable hearsay in a prior opinion.

11

The appellate court explained, "[I]t was reasonable for the superior court to assume we had accurately summarized the record." (*Id*. at p. 662.) Thus, Mendez did not forfeit his right to complain on appeal that he is entitled to the benefit of S.B. 775's amendment of section 1172.6, subdivision (d)(3). (See *People v. Edwards* (2013) 57 Cal.4th 658, 705 [""[W]e have excused a failure to object where to require defense counsel to raise an objection 'would place an unreasonable burden on defendants to anticipate unforeseen changes in the law . . .""""].)

### *The Trial Court Apparently Relied Exclusively on Our Prior Opinion's Factual Summary*

At the beginning of the evidentiary hearing, the trial court said, "In considering [Mendez's] petition, the court has read and considered the record of conviction, including the appellate opinion, which affirmed the judgments, as well as all filings submitted by the parties." The People argue, "The reference to the record of conviction *including* the prior opinion indicates that the court also reviewed the underlying trial record to find [Mendez] ineligible."

It appears that Mendez may be correct in claiming that the trial court "relied exclusively" on the prior appellate opinion's factual summary as evidence of his guilt. (Bold omitted.) In setting forth the relevant facts, the parties referred only to the opinion. The People's opposition to the petition stated, "The following facts are derived directly from the appellate opinion affirming petitioner's conviction." Mendez's reply to the opposition reiterated the same facts and cited the opinion. The record does not show that the trial transcripts or exhibits were submitted to the court. No new evidence was presented.

12

At the evidentiary hearing the prosecutor said, "The People are going to submit on my opposition, which is based . . . entirely on the appellate court decision . . . . The appellate court outlined in detail the facts . . . which support their holding in that case."

In his oral argument to the trial court, defense counsel referred to the "appellate opinion." Counsel stated, "[I]t would certainly appear that the appellate court felt that the record was strong on pure or simple aiding and abetting."

In its oral ruling, the trial court recited the relevant facts. The recitation is almost a verbatim repetition of the opinion's factual summary.

There is no written ruling signed by the court. There is only a minute order stating, "Petition pursuant to [section 1172.6](a) Penal Code is denied." The minute order further states, "The court has read and considered the petition for resentencing pursuant to Penal Code section [1172.6] and all the supporting documentation filed by the petitioner and the People." The minute order does not mention the trial transcripts or exhibits.

Giving Mendez the benefit of the doubt, we cannot assume that the trial court considered the entire record of conviction, including the trial transcripts and exhibits. The trial court apparently relied exclusively on the statement of facts in our prior opinion as evidence of Mendez's guilt. Mendez correctly observes that, if the trial court had reviewed the trial transcripts, "it [should] have known that Salazar's police statements were not admitted before [Mendez's] jury." This gives us pause. Because our prior opinion included evidence not heard by Mendez's jury, a new evidentiary hearing is appropriate. We need not decide the

13

abstract legal issue of the retroactivity of S.B. 775's amendment of section 1172.6, subdivision (d)(3).

*Mendez's Conviction of Attempted Murder*
*Is Ineligible for Section 1172.6 Relief*

"At the time the trial court considered [Mendez's] petition, section [1172.6] did not expressly permit a petition for resentencing on convictions for attempted murder. (§ [1172.6], former subd. (a).)" (*People v. Porter* (2022) 73 Cal.App.5th 644, 651.) S.B. 775 amended section 1172.6, subdivision (a) to provide that the statute applies to a conviction for "attempted murder under the natural and probable consequences doctrine." (Stats. 2021, ch. 551, § 2.) Mendez argues, "Since the denial of the [section 1172.6] petition must be remanded for the murder count, the parties and the court should be directed to litigate whether the attempted murder conviction is invalid" under the law as amended by S.B. 1437.

Mendez's argument is devoid of merit. Because the jury was not instructed on the natural and probable consequences doctrine, as a matter of law Mendez is not eligible for section 1172.6 relief as to the conviction for attempted murder. (*Coley*, *supra*, 77 Cal.App.5th at p. 548.)

*Disposition*

As to Mendez's conviction of second degree murder, the order denying his petition to vacate the conviction and to resentence him is reversed. The matter is remanded for a new evidentiary hearing in compliance with amended section 1172.6, subdivision (d)(3). As to Mendez's conviction of attempted murder, he is not entitled to relief under section 1172.6.

14

NOT TO BE PUBLISHED.

                                    YEGAN, J.

We concur:


        GILBERT, P. J.


        PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15

Lillian Vega Jacobs, Judge

Superior Court County of Los Angeles

_____

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.